UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON

| | | |
|---|---|---|
| TERRY MARTIN, Individually and on behalf of all persons similarly situated, et al. | ) ) ) | Case No. **3 : 08 cv 0326** |
| Plaintiffs, | ) ) | (Judge **WALTER HERBERT RICE**) |
| -v- | ) ) | |
| BEHR DAYTON THERMAL PRODUCTS LLC, et al. | ) ) ) ) | **DEFENDANT CHRYSLER MOTOR LLC'S NOTICE OF REMOVAL** |
| Defendants. | ) ) ) | |

Defendant Chrysler Motors LLC ("Chrysler") hereby gives notice that the above action is hereby removed from the Court of Common Pleas for Montgomery County, Ohio, to the United States District Court for the Southern District of Ohio, Western Division at Dayton. For the reasons set forth below, this Court has jurisdiction over this matter. The basis for removal is as follows:

### Background

1. On August 11, 2008, plaintiffs Terry Martin, Della Grooms, Linda Russell, Clyde Baxter, Annette Baxter, William Baxter, Stephanie Baxter, Jessica Baxter, Alan Parker, Rose Parker, Scott Parker, Mark Wolf, Anthony Wolf, Megan Wolff, Mary Fugate, Ashley Perkins, Charles Rasmussen, Becky Rasmussen, Richard Rasmussen, Robert Waselewski, Amy Waselewski, Shyann Waselewski, Arnold Dixon, Sue Dixon, Debbie Ryerse, Sherry Howard,

Jewell Smith, Marguerite Bocock, Frank Bocock III, Frank Bocock IV, Litisha Bocock, Latasha Bocock, Dakota Bocock, Frank Reed, James Bartlett, Dian Bartlett, and Kimberly Kennedy (collectively "Plaintiffs") filed a Class Action Complaint in the Court of Common Pleas Court for Montgomery County, State of Ohio, where it was known and numbered as Terry Martin, et al. vs. Chrysler Motors LLC, et al., Case No. 2008-CV-07378.

2. Chrysler was served with process and a copy of the Complaint on August 19, 2008. On September 10, 2008, Plaintiffs filed a Motion for Class Certification and supporting brief. No other pleadings or process have been served on Chrysler and no orders have been entered. A copy of the Complaint and process served on Chrysler, as well as the Motion for Class Certification and supporting brief and the state court's docket are attached hereto as **Exhibit 1**. See 28 U.S.C. § 1446(a).

### Allegations in the Complaint

3. In their Complaint, Plaintiffs allege that defendants Chrysler, Behr Dayton Thermal Products, LLC, Gem City Chemicals, Inc., DAP, Inc., Gayston Corporation, and Aramark Uniform & Career Apparel, Inc. (collectively "Defendants") "dumped, poured or spilled toxic chemicals into the environment surrounding their plaints and/or facilities in Dayton, Ohio" for decades. (Complaint ("Comp.") ¶ 3). Plaintiffs further allege that the "toxic chemicals have seeped into the soil, and have infiltrated the groundwater and homes of the Plaintiffs." (Id. at ¶ 4).

4. Plaintiffs seek to represent a class of persons and entities who either own residential property or reside "in the area of contamination overlying the commingled groundwater plume caused by the Defendants chemical releases." (Comp. ¶ 158). Plaintiffs allege that the number of class members is "expected to exceed 1,000." (Id. at 160).

2

5. Plaintiffs allege that the toxic chemicals have contaminated their homes and that "the value of the properties of Plaintiffs and the class have been substantially decreased, if not destroyed." (Comp. ¶150.) Plaintiffs further allege that they and the class "have suffered inconvenience, annoyance and discomfort, and have been deprived of the full use and enjoyment of their properties." (Id. at 151).

6. Plaintiffs allege that the toxic chemicals "have made and/or and continue to make Plaintiffs and the other class members physically ill and/or other physically harmed and/or have caused and continue to cause emotional and mental distress, anxiety and fear of current and future illnesses, including but not limited to, fear of significantly increased risk of cancer and other disease, among Plaintiffs and other class members." (Comp. ¶ 155).

7. Plaintiffs allege that as a direct and proximate result of their exposure to the toxic chemicals they have developed male breast cancer (Comp. ¶ 9), cicatricial pemphigus with lesions (id. at ¶ 16), neuropathy (id. at ¶ 13), severe headaches and migraines (id. at ¶¶ 30, 37, 44, 51, 58, 65, 79, 100, 107), throat infections (id. at ¶ 30), nose bleeds (id.), shortness of breath and other breathing problems (id. at ¶¶ 37, 51, 65, 100), chest pains (id. at ¶¶ 37, 44, 58), sleep apnea (id.), gallbladder problems (id. at ¶ 44), lymph node problems (id. at ¶ 51), cysts on ovaries (id.), colon cancer (id. at ¶ 65), sclera derma (id. at ¶ 72), skin infections (id. at ¶ 79), chronic obstructive pulmonary disease (id. at ¶ 86), kidney problems (id. at ¶ 30, 93), and other illnesses. Plaintiffs allege that as a direct and proximate result of their exposure to the toxic chemicals they have and will incur medical expenses, suffer lost wages, and suffer great physical and emotional pain. (Id. at ¶¶ 6-110).

8. Based on these allegations, Plaintiffs assert claims on behalf of themselves and the putative class for negligence (Count I), nuisance (Count II), past and continuing trespass

3

(Count III), past and continuing battery (Count IV), medical monitoring (Count V), and punitive damages (Count VI). (Comp. ¶¶ 170-212).

9. For relief, Plaintiffs pray for compensatory damages, equitable relief, injunctive relief, declaratory relief, punitive damages, and medical monitoring for themselves and each class member, as well as their attorneys' fees and costs. (Comp. ¶ 2, Prayer for Relief).

## The Class Action Fairness Act

10. Congress passed the Class Action Fairness Act ("CAFA") with the intent to expand federal jurisdiction over class actions. Pub.L. No. 109-2, 119 Stat. 14 (2)(B) (one stated purpose of the Act is to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction"); S.Rep. No. 109-14, at *43, *as reprinted in* 2005 U.S.C.C.A.N. 3, **41 (the Act "is intended to expand substantially federal court jurisdiction over class actions"); *see also* Evans v. Walter Industries, Inc., 449 F.3d 1159, 1164 (11th Cir. 2006) ("The language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction."); Chavis v. Fidelity Warranty Services, Inc., 415 F.Supp.2d 620, 626 (D.S.C. 2006) ("CAFA was passed with the clear intention of expanding 'federal court jurisdiction over class actions'" (citation omitted)).

11. CAFA's provisions "should be read broadly, with a strong preference that interstate class actions be heard in federal court if properly removed by any defendant." S.Rep. No. 109-14, at *43, *as reprinted in* 2005 U.S.C.C.A.N. 3, **41.

12. Pursuant to CAFA, when the number of putative class members exceeds 100, this Court has original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which …

4

any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). The requirements for this Court's exercise of jurisdiction are clearly and unequivocally satisfied in this case.

### Basis for Removal

13. Plaintiffs, as well as all putative class members, are citizens of the State of Ohio. (Comp. ¶¶ 6-110, 158). Chrysler was and is a Delaware Limited Liability Company, with its principal place of business in the State of Michigan, and is therefore a citizen of Delaware and Michigan. *See* Delaware Secretary of State records at http://corp.delaware.gov/directweb.shtml (attached as **Exhibit 2**). Thus, the minimal diversity requirements of CAFA are satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

14. There are more than 100 members of the putative class described by Plaintiffs in the Complaint; indeed, Plaintiffs themselves allege that the number of class members is "expected to exceed 1,000." (Comp. ¶ 160). Thus, the requirement of 28 U.S.C. § 1332(d)(2)(5)(b) that there be at least 100 putative class members is satisfied.

15. Furthermore, it is "more likely than not" that the amount put into controversy by Plaintiffs' claims for relief exceed the sum or value of $5,000,000, exclusive of costs and interest. Plaintiffs allege that Defendants' acts and omissions have directly and proximately caused them to contract serious diseases and illnesses such as male breast cancer (Comp. ¶ 9), colon cancer (id. at ¶ 65), cicatricial pemphigus with lesions (id. at ¶ 16), neuropathy (id. at ¶ 13), gallbladder problems (id. at ¶ 44), lymph node problems (id. at ¶ 51), cysts on ovaries (id.), sclera derma (id. at ¶ 72), chronic obstructive pulmonary disease (id. at ¶ 86), kidney problems (id. at ¶ 30, 93), and other illnesses. Each of the named Plaintiffs allege some physical harm as a result of being exposed to the toxic chemicals. (Comp. ¶¶ 6-110). With such

5

allegations of serious physical harm and injury being made on behalf of a 1,000 persons (Comp. ¶ 160), it is clear as alleged that the amount in controversy exceeds $5 million. Indeed, with a 1,000 class members, each class member damages would only need to be $5,000 to meet the jurisdictional threshold. Based on Plaintiffs' allegations, it is clear that they are seeking more than $5,000 in compensatory relief for each class member's alleged cancer and other illnesses. *See* Dodge v. Cotter Corp., 328 F.3 1212 (10th Cir. 2003) (in case alleging negligence, trespass, nuisance and emotional distress based on environmental contamination, jury awarded 20 plaintiffs $12.5 million for negligence claims, 1.5 million to 13 plaintiffs for trespass, and 2.2 million in punitive damages to 26 plaintiffs).

16. The amount-in-controversy requirement is also met by Plaintiffs' broad and open ended claim for medical monitoring. (Comp. ¶¶ 199-207). Plaintiffs allege that due to their exposure to toxic chemicals they have a "significantly increased risk of contracting one or more serious latent diseases" and that it is thus "necessary for each person so exposed to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of such exposure." (Comp. ¶¶ 203-204). Although Plaintiffs do not specify what medical monitoring they require or how long it will be required, they have alleged a variety of serious illnesses and diseases such as colon cancer, breast cancer, kidney problems, skin infections, breathing problems, gall bladder problems and other illnesses. Based on the serious nature of the alleged diseases and illnesses, as well as their diversity (which would require different types of testing), Plaintiffs' claim for medical monitoring likely places $5 million in controversy. *See* Katz v. Warner-Lambert Co., 9 F.Supp.2d 363, 364-65 (S.D.N.Y. 1998) (when plaintiff brings claim for medical monitoring, the amount in controversy is measured by the cost to defendant of

6

creating the medical monitoring program); In re Rezulin Prods. Liab. Litig., 168 F.Supp.2d 136, 152-53 (S.D.N.Y. 2001) (same).

17. The amount in controversy is also met by Plaintiffs' claims of reduced property value and related loss of enjoyment damages. Specifically, Plaintiffs allege that the toxic chemicals have contaminated their homes and that "the value of the properties of Plaintiffs and the class have been substantially decreased, if not destroyed." (Comp. ¶150.) Plaintiffs further allege that they and the class "have suffered inconvenience, annoyance and discomfort, and have been deprived of the full use and enjoyment of their properties." (Id. at 151). With a 1,000 putative class members, each class member's home and their right to unfettered enjoyment of it would have to be worth only $5,000 to meet this Court's jurisdictional threshold. The fact that a home costs more than $5,000 cannot earnestly be disputed.

18. The amount in controversy is also met by Plaintiffs' broad and open ended claims for injunctive and declaratory relief. (Comp., Prayer for Relief). Plaintiffs pray that the Court order Defendants to "investigate and remedy" the alleged contamination, "to provide a permanent, safe house to the Plaintiffs and the class," and that the Court "disgorge the profits and benefits" Defendants have enjoyed due to their conduct. (Id.) Plaintiffs' prayer for remediation and cleanup of the toxic chemicals, its demand that Chrysler provide safe, permanent housing for 1,000 persons, and order disgorging Chrysler's profits place more than $5 million in controversy.

19. Even if just one of these forms of relief, standing alone, was insufficient to satisfy the $5,000,000 amount in controversy requisite of 28 U.S.C. § 1332(d)(2), all forms of relief sought by Plaintiffs added together, when added to the amount of potential attorneys' fees, would easily exceed the jurisdictional threshold.

7

20. Because it is more likely than not that the claims made by Plaintiffs on behalf of the putative class put into controversy a sum in excess of $5,000,000, this Court's jurisdictional threshold is met. *See* 28 U.S.C. § 1332(d)(2).

21. Because there is minimal diversity, greater than 100 putative class members, and the matter in controversy exceeds the sum of $5,000,000, this Court has jurisdiction under 28 U.S.C. § 1332(d)(2).

22. No statutory exception to CAFA jurisdiction applies in this case. All Plaintiffs and putative class members are citizens of Ohio and Chrysler is the primary defendant and is not a citizen of Ohio.

23. This Notice of Removal is filed within thirty days of August 19, 2008, the date on which Chrysler was first served with summons and complaint. Thus, it is timely filed.

24. Chrysler will promptly file a copy of this Notice of Removal with the clerk of the Montgomery County Common Pleas Court, State of Ohio, and provide written notice of the removal to all other counsel of record pursuant to 28 U.S.C. § 1446(d).

25. The United States District Court for the Southern District of Ohio, Western Division at Dayton embraces the county and court in which Plaintiffs filed this case. 28 U.S.C. § 115(b)(1). Therefore, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

26. By filing this Notice of Removal, Chrysler does not waive, and expressly reserves its rights to challenge personal jurisdiction and venue, service of process, and the sufficiency of service of process, and any other substantive and/or procedural defenses.

Wherefore, Chrysler gives notice that the action pending against it in the Court of Common Pleas of Montgomery County, Ohio has been removed to the United States District Court for the Southern District of Ohio, Western Division at Dayton.

Respectfully submitted,

KEATING MUETHING & KLEKAMP, PLL

Gregory M. Utter (0032528)
Daniel E. Izenson (0047086)
One East Fourth Street; Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6480
Fax: (513) 579-6457
gutter@kmklaw.com
dizenson@kmklaw.com

Trial Counsel for Chrysler Motors LLC

OF COUNSEL:

Brian M. Babb (0034139)
KEATING MUETHING & KLEKAMP, PLL
One East Fourth Street; Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6963
Fax: (513) 579-6457
bbabb@kmklaw.com

Kathy A. Wisniewski
John R. Rogers
THOMPSON COBURN, LLP
One US Bank Plaza
St. Louis, MO 63101
Tel: (314) 552-6000
Fax: (314) 552-7000
kwisniewski@thompsoncoburn.com
jrogers@thompsoncoburn.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT CHRYSLER MOTORS LLC'S NOTICE OF REMOVAL was served upon the following by ordinary mail this 16th day of September, 2008:

Dwight D. Brannon, Esq.
Douglas D. Brannon, Esq.
Brannon & Associates
130 West Second Street, Suite 900
Dayton, Ohio 45402
Attorneys for Plaintiffs

Paul W. Casper, Jr., Esq.
Jeffery A. Culver, Esq.
Frost Brown Todd LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, OH 45202-4182
Attorneys for Defendant
Gem City Chemicals, Inc.

and upon all other Defendants at the following addresses listed on the caption of the Complaint:

Behr Dayton Thermal Products, LLC
1300 East 9th Street
Cleveland, OH 44114

Gayston Corp.
55 Janney Road
Dayton, OH 45404

DAP, Inc.
220 Janney Road
Dayton, OH 45404

Aramark Uniform & Career Apparel Inc.
1300 East 9th Street
Cleveland, OH 44114

Daniel E. Izenson (0047086)

2650595.2