IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

IN RE BEHR DAYTON THERMAL   :     CASE NO. 3:08-cv-00326-WHR
PRODUCTS, LLC

                                    :     (Judge Walter H. Rice)

                                    :

_____

## JOINT MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT AGREEMENT, APPOINT SETTLEMENT CLASS COUNSEL, APPOINT CLAIMS ADMINISTRATOR, APPROVE FORMS AND MANNER OF NOTICE, APPROVE ESCROW AGREEMENT AND ESTABLISH QUALIFIED SETTLEMENT FUND

Plaintiffs Deborah Needham and Linda Russell, individually and on behalf of Settlement

Class A; Plaintiffs Terry Martin and Nancy Smith, individually and on behalf of Settlement Class B;

Defendant Old Carco, LLC, formerly known as Chrysler, LLC, as nominal defendant; Defendant

Aramark Uniform & Career Apparel, LLC; and Defendant MAHLE Behr Dayton LLC; and

Defendant MAHLE Behr USA, Inc. respectfully move pursuant to Federal Rules of Civil Procedure

23(b) and (e) that this Court:

    A.     Certify two settlement classes;

    B.     Preliminarily approve the proposed Class Action Settlement Agreement (the

             "Settlement Agreement") (**Exhibit 2**);

    C.     Appoint Class Counsel as Settlement Class Counsel;

    D.     Appoint RG/2 Claims Administration LLC as Claims Administrator;

    E.     Approve the proposed Escrow Agreement and Qualified Settlement Fund (**Exhibit

             2C**);

    F.     Approve the proposed Notice of Proposed Class Action Settlement (**Exhibit 2B**),

             Publication Notice (**Exhibit 2D**), and Claim Form (**Exhibit 2A**);

    G.     Enter the Proposed Order attached as **Exhibit 2E**; and

H. Provide such other relief as the Court may deem just and proper.

This Motion is supported by the attached Memorandum of Law and all exhibits attached thereto; the files, records, and pleadings in this case; and arguments of counsel in this matter.

Dated: <u>September 15, 2023</u>

Respectfully submitted,

<u>/s/ Patrick A. Thronson</u>
JANET, JANET & SUGGS, LLC
Howard A. Janet
Patrick A. Thronson
4 Reservoir Circle, Suite 200
Baltimore, Maryland 21208
Facsimile: (410) 653-9030
Email: <u>hjanet@myadvocates.com</u>
Email: <u>pthronson@jjsjustice.com</u>

BRANNON & ASSOCIATES
Douglas D. Brannon
130 West Second Street, Suite 900
Dayton, Ohio 45402
Facsimile: (937) 228-8475
Email: <u>dougbrannon@branlaw.com</u>

NATIONAL LEGAL SCHOLARS LAW FIRM, P.C.
Ned Miltenberg
5410 Mohican Road, Suite 200
Bethesda, Maryland 20816-2162
Email: <u>NedMiltenberg@gmail.com</u>

GERMAN RUBENSTEIN LLP
Steven German
Joel Rubenstein
19 West 44th Street, Suite 1500
New York, New York 10036
Facsimile: (212) 704-2020
Email: <u>sgerman@germanrubenstein.com</u>
Email: <u>jrubenstein@germanrubenstein.com</u>

**Counsel for Plaintiffs Terry Martin, Deborah Needham, Linda Russell, and Nancy Smith, individually and on behalf of all others similarly situated.**

2

/s/ Edward Cohen (with permission)
THOMPSON COBURN LLP
Edward A. Cohen
J. David Duffy
One US Bank Plaza
St. Louis, Missouri 63101
Facsimile: (314) 552-7000
Email: ecohen@thompsoncoburn.com
Email: dduffy@thompsoncoburn.com

Erin E. Rhinehart (0078298)
        Trial Attorney
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3714
Telecopier: (937) 227-3717
Email: erhinehart@ficlaw.com

**Counsel for Defendant Old Carco, LLC,
formerly known as Chrysler, LLC, as nominal defendant**

/s/ Michael Lichtenstein (with permission)
LOWENSTEIN SANDLER LLP
Michael D. Lichtenstein
One Lowenstein Drive
Roseland, New Jersey 07068
Facsimile: 973.597.2409
Email: mlichtenstein@lowenstein.com

**Attorneys for Defendant Aramark Uniform &
Career Apparel, LLC**

/s/ Khalilah Spencer (with permission)
HONIGMAN LLP
Khalilah V. Spencer
Raechel T.X. Conyers
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Facsimile: (313) 465-7655
Email: kspencer@honigman.com
Email: rconyers@honigman.com

**Attorneys for Defendants MAHLE Behr USA, Inc.
and MAHLE Behr Dayton LLC**

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| IN RE BEHR DAYTON THERMAL PRODUCTS, LLC | : | CASE NO. 3:08-cv-00326-WHR |
| | : | (Judge Walter H. Rice) |
| | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO PRELIMINARILY
APPROVE CLASS ACTION SETTLEMENT AGREEMENT, APPOINT SETTLEMENT
CLASS COUNSEL, APPOINT CLAIMS ADMINISTRATOR, APPROVE FORMS AND
MANNER OF NOTICE, APPROVE ESCROW AGREEMENT AND ESTABLISH
QUALIFIED SETTLEMENT FUND**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ...................................................................................................... 1

**PROPOSED CLASS DEFINITIONS FOR SETTLEMENT PURPOSES** ................ 2

**BACKGROUND** ........................................................................................................ 3

    **A. The Settlement Fund** ......................................................................................... 7

    **B. Notice to Settlement Class Members** ................................................................ 8

    **C. Opt-out and objection provisions** ...................................................................... 8

    **D. Claims Process** ................................................................................................... 9

    **E. Disbursements of settlement funds to class members** ...................................... 9

    **F. Named Plaintiffs' service awards** ..................................................................... 10

    **G. Attorney's fee provisions** ................................................................................ 11

**ARGUMENT** ........................................................................................................... 11

    **I.**     **The proposed settlement is fair, reasonable, and adequate.** ........................... 12

    **A. The proposed settlement is free of fraud or collusion.** ..................................... 12

    **B. The complexity and duration of this case underscores the appropriateness of settlement.** ........................................................................................................ 13

    **C. The uncertain likelihood of success warrants approving the settlement.** ........ 15

    **D. Class counsel, the class representatives, and the mediator all approve of the proposed settlement.** ......................................................................................... 16

    **E. The proposed settlement is in the best interest of absent class members.** ...... 16

    **F. The public interest warrants approving this settlement.** ................................... 18

    **II.**    **The attorney's fees and costs to be requested will be fair, reasonable, and adequate.** ...................................................................................................... 18

    **III.**   **The proposed method of distributing relief to the class is appropriate and effective.** ................................................................................................... 18

    **IV.**   **The proposed class notice is appropriate.** ................................................... 19

    **V.**    **The proposed Settlement Classes meet the requirements of Rules 23(a) and (b).** ...... 20

**A. This Court has already determined that Rule 23(a) and the implied requirement of ascertainability are satisfied for the proposed settlement classes.** ...............................21

**B. All Rule 23(a) elements are satisfied for the proposed settlement classes.** ...................22

**C. The proposed settlement class meets the requirements of Rule 23(b)(3).** ....................24

**VI.   The Court should establish a qualified settlement fund to effectuate the settlement.** ...................................................................................................................................28

**VII.   Proposed schedule of events** ...............................................................................................29

**CONCLUSION** ....................................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) ...............................................................................................13, 21, 25

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) .........................................................................................24, 25

*Brandenburg v. Cousin Vinny's Pizza, LLC,*
  No. 3:16-CV-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) ...............................17, 18

*China Agritech, Inc. v. Resh,*
  138 S. Ct. 1800, (2018) .......................................................................................................17

*Does 1-2 v. Deja Vu Servs., Inc.,*
  925 F.3d 886 (6th Cir. 2019) ..............................................................................................12

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ..............................................................................................24

*In re Cincinnati Policing,*
  209 F.R.D. 395 (S.D. Ohio 2002).......................................................................................14

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
  130 F.R.D. 366 (S.D. Ohio 1990)........................................................................................14

*In re Flint Water Cases,*
  571 F. Supp. 3d 746 (E.D. Mich. 2021).............................................................................25

*In re Gen. Tire & Rubber Co. Sec. Litig.,*
  726 F.2d 1075 (6th Cir.1984) .............................................................................................15

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008)................................................................................................25

*In re Hyundai & Kia Fuel Econ. Litig.,*
  926 F.3d 539 (9th Cir. 2019) ..............................................................................................13

*In re Initial Pub. Offerings Sec. Litig.,*
  471 F.3d 24 (2d Cir. 2006)..................................................................................................25

*In re Inter-Op Hip Prosthesis Liab. Litig.,*
  204 F.R.D. 330 (N.D. Ohio 2001) ..........................................................................25, 26, 28

*In re Nat'l Prescription Opiate Litig.*,
976 F.3d 664 (6th Cir. 2020) ................................................................................21

*In re Packaged Ice Antitrust Litig.*,
No. 17-2137, 2018 WL 4520931 (6th Cir. May 24, 2018) ....................................13

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d ..................................................................................................................25

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ................................................................................22

*Intercommunity Just. & Peace Ctr. v. Registrar, Ohio Bureau of Motor Vehicles*,
440 F. Supp. 3d 877 (S.D. Ohio 2020) ..................................................................23

*International Union, UAW, et al. v. General Motors Corp.*,
497 F.3d 615 (6th Cir. 2007) ......................................................................... 12, 14

*Martin v. Behr Dayton Thermal Prod. LLC*,
896 F.3d 405 (6th Cir. 2018) ..................................................................................6

*Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) ................................................................................25

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) ................................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..............................................................................................19

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
636 F.3d 235 (6th Cir. 2011) ................................................................................15

*Rutstein v. Avis Rent–A–Car Sys., Inc.*,
211 F.3d 1228 (11th Cir. 2000) ............................................................................25

*Tennessee Ass'n of Health Maint. Organizations v. Grier*,
262 F.3d 559 (6th Cir. 2001) ................................................................................12

*Vassalle v. Midland Funding LLC*,
708 F.3d 747 (6th Cir. 2013) ................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................ 22, 23

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ......................................................................................... 12, 15

## **Statutes**

Ohio R.C. §§ 2315.18(B) ...................................................................................................... 16

Internal Revenue Code § 468B ........................................................................................ 28, 29

## **Rules**

Federal Rule of Civil Procedure 23 ................................................................................. passim

## **Regulations**

Treasury Regulation 1.468B .................................................................................................. 28

## **Other Authorities**

5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) ............................................. 17

Plaintiffs Deborah Needham and Linda Russell, individually and on behalf of Settlement Class A, and Plaintiffs Terry Martin and Nancy Smith, individually and on behalf of Settlement Class B (collectively hereinafter, "Plaintiffs")—along with Defendants Old Carco, LLC, formerly known as Chrysler, LLC, as nominal defendant; MAHLE Behr Dayton LLC and MAHLE Behr USA, Inc. (collectively "MAHLE Behr Defendants"); and Aramark Uniform & Career Apparel, LLC (collectively hereinafter, "Defendants")—by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Joint Motion To Preliminarily Approve Class Action Settlement Agreement, Appoint Settlement Class Counsel, Appoint Claims Administrator, Approve Forms And Manner Of Notice, Approve Escrow Agreement And Establish Qualified Settlement Fund (the "Motion"). In support of the Motion, Plaintiffs and Defendants ("the Parties") state as follows:

## INTRODUCTION

This case began in September 2008, when thirty named Plaintiffs filed a class action against Defendants for claims relating to historical releases of volatile organic compounds ("VOCs") from properties currently or formerly owned by Defendants in the McCook Field Neighborhood of Dayton, Ohio. After nearly fifteen years of litigation, a bankruptcy stay, interlocutory appeals, extensive merits and class discovery, and dispositive motion practice, the parties have, with the help of an experienced and very capable mediator, reached a proposed settlement and have agreed upon a Class Action Settlement Agreement (the "Settlement Agreement") that all parties agree is an appropriate resolution of this matter. Pursuant to the Settlement Agreement, Defendants will fund a $9,000,000.00 qualified settlement fund, administered by a third-party claims administrator, to be distributed in equal shares to property owners pursuant to the terms set forth in the Settlement Agreement.

The Settlement Agreement meets the standards set for preliminary approval in Federal Rule of Civil Procedure 23(e). The Settlement Agreement will provide substantial benefit to the named Plaintiffs and class members and allows all parties to avoid the substantial delay, costs, and risks inherent in further litigation and multiple trials, involving highly complex and specialized legal and factual issues. The Settlement Agreement is the result of arm's-length negotiations between experienced attorneys and comes after extensive discovery and motion practice and a protracted mediation that originally commenced in August 2019 and continued in October 2022 after dispositive motions were concluded.

For these reasons, and the additional reasons set forth herein, the parties respectfully request that the Court preliminarily approve the Settlement Agreement as a fair, reasonable, and adequate resolution of the Settlement Class Members' claims; approve the proposed Escrow Agreement and Qualified Settlement Fund (attached as **Exhibit 2C**), and set a schedule for the next steps, including a fairness hearing.

## PROPOSED CLASS DEFINITIONS FOR SETTLEMENT PURPOSES

For purposes of settlement, the parties jointly propose certification of the following Settlement Classes[1] under Fed. R. Civ. P. 23(b)(3) and 23(e):

> "Settlement Class A" means Persons who, at any time during the Class Ownership Period, owned or own real property located within the area identified as "Class A" on the attached map. (*See* Exhibit 1, attached.) This corresponds to the area geographically depicted by the yellow shaded area on Exhibit 1 to the Third Amended Master Class Action Complaint (Doc. No. 242-1), which is attached as Exhibit F to the Settlement Agreement.

> "Settlement Class B" means Persons who, at any time during the Class Ownership Period, owned or own real property located within the area identified as "Class B" on the attached map. (*See* Exhibit 1, attached.) This corresponds to the area geographically depicted by the red shaded area on Exhibit 1 to the Third Amended

---

[1] The Settlement Agreement defines and uses the term "Settlement Class" collectively to include both Settlement Class A and Settlement Class B.

Master Class Action Complaint (Doc. No. 242-1), which is attached as Exhibit F to the Settlement Agreement.

These proposed Class Areas[2] were previously approved by the Court in connection with its Order approving issue-class certification (Doc. 274). The Class Areas correspond to delineations of the plume areas by Plaintiffs' hydrogeology expert, Nicole Sweetland, Ph.D. Dr. Sweetland's office used a GIS program to generate a list of addresses for properties in the Class Areas/Settlement Class Areas, which was utilized to provide notice for the Issues Trial (Docs. 319, 348) and will be utilized in providing notice of the proposed Settlement.

## BACKGROUND

### I.     Brief Factual Background

This consolidated class action, filed by the Plaintiffs on behalf of themselves and other similarly situated persons, alleges that residential, commercial, and tax-exempt properties in the McCook Field neighborhood of Dayton, Ohio have been contaminated because of exposure to trichloroethylene (TCE) and perchloroethylene (PCE). Plaintiffs allege that, as a result of negligence by the Defendants, TCE and PCE contamination has migrated through groundwater from two facilities in the McCook Field Neighborhood in Dayton, Ohio: (1) an automotive parts manufacturing facility located at 1600 Webster Street in Dayton that was operated by Daimler Chrysler and Chrysler, LLC (predecessors in interest to nominal defendant Old Carco, LLC) from 1937–2002, and then from 2002 to the present by MAHLE Behr Defendants (the "Chrysler-Behr Facility"); and (2) a commercial laundry facility located at 1200 Webster Street in Dayton, owned and operated by Aramark or its predecessors in interest (the "Aramark Facility") (collectively, "the Facilities"). Plaintiffs further allege that, due to tortious conduct by the Defendants, PCE and TCE

---

[2] Capitalized terms are used herein with the meanings contained in the accompanying proposed Settlement Agreement, which is attached hereto as Exhibit 2 and incorporated by reference herein. In the event of any conflict between this Memorandum of Law and the Settlement Agreement, the Settlement Agreement controls.

originating from the Facilities has intruded into hundreds of homes and other buildings atop the overlapping plumes in the McCook Field Neighborhood, also known as the Behr Dayton Thermal VOC Plume Site ("the Site"), through vapor intrusion, thereby causing extensive property damage. Plaintiffs further allege they are entitled to damages for lost property value, loss of the use and enjoyment of their properties, and damage to their community. (Third Amended Complaint, RE 242, Page ID # 7083.) Defendants deny all liability and deny Plaintiffs are entitled to any damages.

## II. Procedural Background

In 2008, thirty named Plaintiffs owning property in the McCook Field neighborhood sued Defendants or their predecessors in interest. Defendants removed the action from Ohio's Montgomery County Court of Common Pleas to this Court. Two other class action lawsuits with similar allegations were filed contemporaneously.[3] The cases were consolidated in this Court with the filing of Plaintiffs' Master Amended Class Action Complaint on January 3, 2012.[4]

The parties underwent years of extensive fact and expert discovery, both for class certification and later on the merits during the issues phase. The parties have deposed approximately twenty witnesses, they have propounded and responded to extensive interrogatories, requests for production of documents, and third-party subpoenas. They exchanged approximately 135,000 documents in discovery or obtained through publicly available sources, amassing at least 538 gigabytes; approximately 15 expert reports and supplementations, some with attachments and exhibits exceeding thousands of pages were prepared and exchanged.

---

[3] These actions were *First Property Group, Ltd.,* et al. *v. Behr Dayton Thermal Products, LLC,* et al., No. 3:08-CV-00329 (S.D. Ohio filed Sept. 17, 2008); and *Kimberly Spears,* et al. *v. Chrysler LLC,* et al., No. 3:08-CV-00331 (S.D. Ohio filed Sept. 18, 2008).

[4] The reason for this delay is that the action was stayed from May 7, 2009 until April 14, 2011 due to Chrysler's bankruptcy proceedings. (*See* Order Staying Action, Page ID # 1052; Order Granting Motion to Lift Stay, Page ID # 1117.) Old Carco remained a nominal defendant solely to allow Plaintiffs to pursue any applicable policies of insurance that insured Chrysler. (Third Amended Complaint, Page ID # 7082 n.1.) See also Footnote 7.

In 2015, Plaintiffs moved for class certification on two alternative grounds. First, Plaintiffs sought class certification on the issue of liability pursuant to Rule 23(b)(3) as to certain causes of action. (Doc. No. 254-1, Page ID # 7377.) The Court found the proposed class certification satisfied the requirements of Rule 23(a) but did not meet the predominance requirement of Rule 23(b)(3). (Doc. No. 274, Page ID # 9738– 41.)

The Court did, however, sustain Plaintiffs' alternative request for certification under Rule 23(c)(4) and certify two classes pursuant to Rule 23(c)(4) to consider seven certified class issues. The two classes certified were: (1) the Chrysler-Behr Class, consisting of "all persons who on or after April 1, 2006 owned property located within the Chrysler- Behr Class Area, which is geographically depicted by the yellow shaded area on [the map of the area]" (*see* Doc. No. 242-1); and (2) the Chrysler-Behr-Aramark Class, consisting of "all persons who on or after April 1, 2006 owned property located within the Chrysler-Behr-Aramark Class Area, which is geographically depicted by the red shaded area on [the map of the area]" (*see* Doc. No. 242-1). These class definitions were based on the plume areas articulated by Plaintiffs' environmental contamination expert, Dr. Nicole Sweetland. (*See* Doc. No. 254-26, Page ID # 7726; Sweetland Report, Doc. No. 263-3, Page ID ## 9171–78.)

The seven issues on which the Court granted certification were:

1. Each Defendant's role in creating the contamination within their respective Plumes, including their historical operations, disposal practices, and chemical usage;

2. Whether or not it was foreseeable to Chrysler and Aramark that their improper handling and disposal of TCE and/or PCE could cause the Behr-DTP and Aramark Plumes, respectively, and subsequent injuries;

3. Whether Chrysler, Behr, and/or Aramark engaged in abnormally dangerous activities for which they are strictly liable;

4. Whether contamination from the Chrysler-Behr Facility underlies the Chrysler-Behr and Chrysler-Behr-Aramark Class Areas;

5.  Whether contamination from the Aramark Facility underlies the Chrysler-Behr-Aramark Class Area;

6.  Whether Chrysler and/or Aramark's contamination, and all three Defendants' inaction, caused class members to incur the potential for vapor intrusion; and

7.  Whether Defendants negligently failed to investigate and remediate the contamination at and flowing from their respective Facilities.

Defendants appealed the Court's certification order. The United States Court of Appeals for the Sixth Circuit affirmed certification. *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405 (6th Cir. 2018). The Supreme Court denied Defendants' petition for a writ of certiorari. *Behr Dayton Thermal Prod. LLC v. Martin*, 139 S. Ct. 1319 (2019).

Plaintiffs previously provided a court-approved notice to class members notifying them of the Issues Trial. (*See* Doc. Nos. 329, 348.) Notably, Plaintiffs received only two timely opt-out requests. (*See* Doc. No. 348 at 2.)

All parties moved for summary judgment on various issues or claims. (*See, e.g.*, Doc. Nos. 357, 359, 360, 362, 365, 373, 371, 376, 382, 383, 385). Following briefing and oral argument, the Court entered an order that sustained Plaintiffs' Motion for Partial Summary Judgment on Issues 4 and 5, sustained Defendants' Motion for Summary Judgment on Issue 3, and sustained Defendant Aramark's Motion for Summary Judgment on Issue 2. (Doc. No. 393.) The Court also denied the Parties' *Daubert* motions to limit expert testimony. (Doc. No. 394.)

The Parties then filed numerous and voluminous pretrial filings, including trial briefs, exhibit and witness lists, motions in limine, proposed voir dire and jury instructions and special verdict forms. Thereafter, Defendants moved for decertification, and the Court requested input on Seventh Amendment issues, which the Parties briefed and argued before the Court. (Doc. Nos. 409, 434.). Shortly before trial was scheduled to begin, the Parties agreed to continue the trial date to allow the

Parties the opportunity to continue mediation with experienced mediator John Barkett, an independent neutral, who has extensive experience mediating and litigating complex environmental tort claims.[5] During these additional mediation proceedings, the Parties reached agreement in principle on the monetary terms of a settlement and subsequently reached agreement on the remaining terms of the proposed Settlement Agreement. A declaration from Mr. Barkett in support of the proposed Settlement Agreement is attached as **Exhibit 3**.

### III.    The Parties' Settlement Agreement

The Settlement Agreement was negotiated in good faith, by experienced counsel who vigorously advocated for their respective clients. (Ex. 2, § I.6.) The proposed settlement will provide monetary relief to the named plaintiffs and unnamed class members that is particularly favorable, especially given the uncertainties of litigation, including the issues trial, merits trials on individual claims, and additional appeals. (*Id.* at § I.8.) A summary of the proposed settlement terms follows.

### A.    The Settlement Fund

Per the proposed settlement, Defendants will fund a qualified Settlement Fund in the amount of nine million dollars ($9,000,000.00), which will represent the limit and extent of Defendants' monetary obligations under the Settlement Agreement. (Ex. 2, §§ II.43, IV.2.) A proposed third-party Claims Administrator (RG/2 Claims Administration LLC)[6] will administer the Settlement Funds in accordance with the provisions of the Settlement Agreement. (See **Exhibit 2**). This Settlement Fund will cover all costs, fees, and payments associated with the Settlement Agreement, including the following payments in order of priority: (i) approved attorneys' costs and

---

[5] In August 2019, after the action had been remanded following denial of Defendants' petition for certiorari concerning the Court's April 17, 2017 class certification order, counsel for all parties engaged in a two-day in-person mediation session facilitated by Barkett.

[6] A summary of RG/2 Claims Administration, LLC's qualifications and experience is attached as **Exhibit 4**.

expenses; (ii) approved fee award to Class Counsel; (iii) approved Claims Administration Expenses; (iv) incentive awards or other compensation to the Settlement Class Representatives; (v) payments to eligible Class Members; and (vi) any Remaining Funds which will be used as a donation for the community. (*Id.* at § IV.5.)

### B. Notice to Settlement Class Members

The parties propose to notify the class members with a physical, mailed notice, as well as a Class Website, www.mccookfieldclassaction.com. (*Id.* at § IV.3.) This website was used to notify the class members of the existence of the issues classes previously approved by this Court and is still an active website. (*Id.* at § IV.3.) Notice will also be provided by publication in the *Dayton Daily News*, a newspaper of general circulation in Dayton, Ohio, once a week for three consecutive weeks commencing on the Notice Date. (*Id.* at § IV.3.) Said publication notice will be in the form of **Exhibit 2D** to the Settlement Agreement, or other such form as the Court may order.

### C. Opt-out and objection provisions

The Settlement Agreement permits any class member to opt out of the settlement class by mail. (*Id.* at § VIII.1.) The Settlement Classes will not include any individuals who opt out, and any individuals who opt out will not receive any monetary award under the Settlement Agreement. (*Id.* at § VIII.1.)

Further, any member of a Settlement Class who wishes to object may do so by mailing that objection to the Court, Class Counsel, and counsel for all Defendants, at addresses listed in the Notice. (*Id.* at § VIII.2.) Any timely objectors will have the right to be heard at the Final Approval Hearing, should they timely request it. (*Id.* at § VIII.2.)

Any Class Member who does not opt out or object shall be deemed to have waived any objections. (*Id.* at § VIII.3.) No party or anyone acting on their behalf, including counsel, shall solicit or encourage objections or opt-outs. (*Id.* at § VIII.4.)

### D. Claims Process

To receive a share of the settlement it will be incumbent upon a participating and eligible class member to complete the Claim Form and submit the completed Claim Form to the Administrator. See Agreement, § II.6, § IV.3.g. The Claim Form, which is attached hereto as **Exhibit 2A** will be made available through the website. Upon receipt of a timely Claim Form, and receipt of any additionally required documentation to support entitlement to a share of the settlement fund, the Settlement Class Member will be entitled to receive their respective share under Section IV of the Settlement Agreement.

### E. Disbursements of settlement funds to class members

After initial distributions are made for approved Claims Administration Expenses, to Class Counsel for attorney's fees and expenses, and to any Class Representatives as incentive payments, the balance of the Settlement Fund shall be allocated to the class members. (*Id.* at § IV.5.)

Every Settlement Class Property shall be assigned an equal share of the Settlement Class Funds. (*Id.* at § IV.5.) For example, if Settlement Class Funds amount to Four Million Dollars ($4,000,000), each of the estimated 540 Settlement Class Properties will be allocated an estimated share worth approximately $7,407. (*Id.* at § IV.5.b.1.)

If record title ownership of a property in the Settlement Classes has changed during the Class Ownership Period, the current owners of Settlement Class Property and any prior owners who held title to the property during the Class Ownership Period are each entitled to a time-weighted, pro rata amount of the single share of the Settlement Class Funds for that property. (*Id.* at §§ IV.5.b.2, IV.6.) For example, if the Class Ownership Period is seventeen (17) years, Person X owned Settlement Class Property for eight (8) years and six (6) months, and Person Y owned the same Settlement Class Property for eight (8) years and six (6) months, X and Y would each receive one-half of the single share. (*Id.* at § IV.5.b.2.) Record title ownership and the period of ownership

are subject to verification. (*Id.*)

To the extent there are multiple owners of record title at the same time for a single Settlement Class Property, a single payment for the property will be issued to these record title owners as a group. (*Id.* at § IV.5.b.3.) The allocation of that payment among those record title owners will be for the record title owners to determine and will not be determined in the claims administration process. (*Id.*)

Any disputes between Persons involving entitlement to Settlement Class Funds shall be resolved between the disputants and shall not be resolved by the Claims Administrator. (*Id.* at § IV.5.b.4.) The Settlement Class Funds allocated to a Settlement Class Property that is the subject of any such dispute shall be held in escrow until the disputants file a final resolution of said dispute with the Claims Administrator, the terms of which shall determine the allocation of Settlement Class Funds to the disputants. (*Id.*)

Any funds that cannot be otherwise allocated, and any funds from checks not cashed within 60 days of the date of issuance, will return to the Settlement Fund, to be distributed as Unclaimed Funds. (*Id.* at § IV.5.b.) Any Unclaimed funds will be distributed amongst the Class Members until the Claims Administrator determines that the cost of a distribution exceeds the remaining amount of Unclaimed Funds. (*Id.* at § IV.5.c.) At that point, any Remaining Funds shall be donated to the community. (*Id.*) The Parties will propose one or more organizational recipients of donated funds to the Court in advance of final approval. (*Id.* at § IV.5.c.)

### F. Named Plaintiffs' service awards

In addition to any compensation from the Settlement Fund to which they may be entitled under the Settlement Agreement, the Settlement Agreement provides that Class Counsel may request that the Court approve service awards (sometimes called incentive payments) to Settlement Class Representatives Terry Martin, Deborah Needham, Linda Russell, and Nancy Smith, in the

amount of $10,000 each. (*Id.* at § VI.5.) The Claims Administrator shall pay such awards via check from the Settlement Fund to the Settlement Class Representatives, care of Class Counsel, within fifteen (15) days after the Effective Date. (*Id.*)

### G. Attorney's fee provisions

There has been no agreement between Plaintiffs and Defendants on a fee award to Class Counsel. (*Id.* at § VI.2.) The parties have agreed that, within fourteen (14) days of the entry of an order granting the accompanying Motion for Preliminary Approval of Class Action Settlement, or at such other time as the Court may direct, Class Counsel shall file a petition for fees and costs with the Court and shall promptly post the petition on the Class Website. (*Id.* at § VI.3.)

## ARGUMENT

In the Sixth Circuit, before approving a settlement proposal:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tennessee Ass'n of Health Maint. Organizations v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920–21 (6th Cir. 1983)). Preliminary approval is based on a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms. *See Vukovich*, 720 F.2d at 921 (describing the different stages of review).

As part of the preliminary approval process, Rule 23 of the Federal Rules of Civil Procedure requires parties to provide "information sufficient to enable [the court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). "The court must direct notice . . . if the parties show that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" after a fairness hearing. Fed. R. Civ. P. 23(e)(1)(B); Fed. R. Civ. P. 23(e)(1) advisory committee's notes to 2018 amendment (notice should be directed if "the proposed settlement will likely earn final

approval after notice and an opportunity to object").

As the Parties explain below, final approval is likely, and the Court should enter the Order attached as **Exhibit 2E**.

## I.    <u>The proposed settlement is fair, reasonable, and adequate.</u>

This Circuit has "established a seven-factor test to assess whether or not a class action settlement is 'fair, reasonable, and adequate.' " *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (quoting *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "Those factors include: (1) the 'risk of fraud or collusion,' (2) the 'complexity, expense and likely duration of the litigation,' (3) the 'amount of discovery engaged in by the parties,' (4) the 'likelihood of success on the merits,' (5) the 'opinions of class counsel and class representatives,' (6) the 'reaction of absent class members,' and (7) the 'public interest.' " *Id.* (quoting *UAW*, 497 F.3d at 631). The Court may also consider "whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.' " *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n. 11 (6th Cir.1983)). The analysis of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate.

### A.    The proposed settlement is free of fraud or collusion.

Courts across the country recognize the risk of fraud or collusion as the "chief" risk unique to settlement classes. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) ("At the same time, a proposal to certify a settlement class presents other concerns—the risk of collusion chief among them—that 'demand undiluted, even heightened, attention' by the district court.") (quoting *Amchem*, 521 U.S. at 619). As the Sixth Circuit has held, however, where "[t]he parties litigated for almost four years before reaching a settlement agreement[, and t]he court fielded numerous contested pretrial motions," a court may conclude the settlement is not the product of

fraud and collusion.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009).

This case is 15 years old. This case has gone on almost four times as long as *Moulton,* and any allegations of collusion would be baseless here. There is no doubt that the parties have zealously advanced their respective interests in this litigation. They have proceeded through every potential stage of litigation short of actual trial and post-trial appeal (i.e., motions to dismiss, class discovery, interlocutory appeal, merits discovery, dispositive motions, *Daubert* motions, motions in limine, and other extensive pretrial filings). The time and expense expended by all of the parties also demonstrates that there is no collusion or fraud.  Furthermore, this is not a case like *Amchem*, where the sides are seeking to settle a class action immediately after filing it or as a means of distributing funds outside of a bankruptcy process. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 601 (1997). There is no fraud or collusion here.

**B.     The complexity and duration of this case underscores the appropriateness of settlement.**

Rule 23 requires courts to consider "the costs, risks, and delay of trial and appeal" in determining whether to approve settlement agreements. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also*, *In re Packaged Ice Antitrust Litig.*, No. 17-2137, 2018 WL 4520931, at *6 (6th Cir. May 24, 2018) (citing *Gen. Motors Corp.*, 497 F.3d at 631).

Courts look to the complexity, expense, and likely duration of the litigation when considering these factors. Settlement is more likely to be approved if the case has a long history, *Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 604 F. Supp. 68, 77 (S.D. Ohio 1984); if the issues involved would require significant trial time to resolve, *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002); if appeals are likely to further delay ultimate resolution, *e.g.*, *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990); or if the plaintiffs' circumstances make delay particularly prejudicial, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001).

As described *supra*, during fifteen years of litigation, the Parties conducted extensive factual and expert discovery, exchanged massive document productions, subpoenaed third party sources, and produced and deposed experts whose reports may have exceeded thousands of pages. Discovery for this case has been extensive.

Here, the costs and risks of continued litigation weigh in favor of approval here. This case has had well over a decade of active litigation. Litigating this case through the Issues Trial would bring further delay and additional expense, and further opportunity for an appeal. Even after resolution of any appeal, trials of the individual claims would occur, each of which also could be appealed. Approval of the Settlement Agreement will result in both finality for the parties and benefit to all class members on a much quicker time horizon. This is particularly true in this case because, as discussed *infra*, the resolution of the Issues Trial, even if favorable to the plaintiffs, could still lead to years, if not decades, of further litigation through individual causation and damage trials of each individual property owner's claims, in addition to appeals.

Additionally, the Settlement Agreement is informed by the reports from seven experts between the parties that were submitted during class certification and issues class discovery alone. Each of the experts reviewed and relied on tens of thousands of pages of documents and information and numerous depositions of fact witnesses. All of the parties have had ample opportunity to review and respond to expert reports, take depositions of said experts, and provide rebuttal reports. The opinions of numerous qualified experts have helped ensure that this settlement reflects the merits of the case and the risks of further litigation.

Moreover, the Parties are represented by experienced counsel that have decades of experience in complex toxic torts litigation. These experienced counsel all jointly seek approval of the Settlement Agreement. The Sixth Circuit has stated that "court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs." *Vukovich*,

- 14 -

720 F.2d at 922 (citations omitted).

### C. The uncertain likelihood of success warrants approving the settlement.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir.1984)).

This complex and protracted litigation has been very expensive for all parties and a trial on the certified issues would result in additional great expense given the complex factual disputes and the involvement of multiple expert witnesses. The outcome of the issues proceeding is also highly uncertain. While Plaintiffs' claims have survived summary judgment, at least in part, and the Court's summary judgment ruling established that at least some contamination from each Facility is present at the Site, Plaintiffs' strict liability theory was dismissed on summary judgment, making Plaintiffs' likelihood of success less certain.

More importantly, the parties continue to dispute the precise extent of the contamination, how much – if any - of this contamination is percolating into Plaintiffs' residences, and each Defendant's specific legal responsibility, if any, for the releases emanating from their property. While Plaintiffs and Defendants have different opinions on the merits and likelihood of success at a trial, as evidenced by the Court's decision on the motions for summary judgment, either side has a significant chance of prevailing on some or all of the issues at the Issues Trial.

Nonetheless, even if Plaintiffs succeeded on all issues at the Issues Trial, the case would still need to proceed to separate trials on issues of proximate cause, injury in fact, and damages for *each*

plaintiff or class member.[7] Moreover, each such potential claim, if tried individually, could be a low-to negative-value case because 1) the average value of the properties in the class areas is low, 2) the expense of trying these claims is high, and 3) non-economic and punitive damages are capped.[8] Consummating an appropriate settlement at this point not only conserves the resources of the parties and the Court, but it likely provides greater benefit to the class members than a trial of each individual's claims. Furthermore, settlement avoids further delay in compensating Plaintiffs and class members for their alleged property damage.

> **D.** **Class counsel, the class representatives, and the mediator all approve of the proposed settlement.**

Per the attached proposed Settlement Agreement (**Exhibit 2**), the named Plaintiffs and their counsel all agreed to this settlement and seek approval by the Court.  Class counsel all believe that the proposed settlement is fair, reasonable, and adequate, which weighs in favor of court approval. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *4 (S.D. Ohio Nov. 25, 2019). John M. Barkett, who first became involved as a mediator in this case in 2019, has submitted a declaration describing the extensive settlement negotiations in this matter and supporting the fairness, reasonableness, and adequacy of the proposed settlement. *See* **Exhibit 3.**

> **E.** **The proposed settlement is in the best interest of absent class members.**

The proposed Settlement Agreement will materially benefit all class members and will do so much sooner than the litigation process has or will otherwise provide. While it is theoretically possible that a class member could recover more than their share of the settlement, that individual

---

[7] In addition, even if Plaintiffs were to succeed at the Issues Trial *and* thereafter an individual claimant proceeds to a separate trial and prevails by establishing proximate cause, injury in fact, and damages, then that individual claimant would still face substantial collectability issues as to Old Carco because Old Carco itself was dissolved following its bankruptcy, and, in addition to potential coverage issues, the targeted policy has an as-yet unsatisfied $5,000,000 self-insured retention.

[8] *See* Ohio R.C. §§ 2315.18(B); 2315.21(D) (2023).

class member could only do after significant investment of resources and time, including that spent in an intervening issues trial, trials on their individual claims, and multiple rounds of appeal. Still, there would be no guarantee of success at any stage.

Additionally, the proposed settlement divides the Settlement Fund into equal shares per property, which is recovered on a prorated basis based on length of property ownership. This distribution treats all class members equally. And the proposed distribution takes into account potential past and future injury. Dividing the settlement proceeds equally among the class member properties, with owners of each property receiving a share of the settlement proceeds based on their length of ownership, is an equitable means of distributing the settlement proceeds.

Furthermore, the proposed settlement does not disproportionately benefit the named plaintiffs at the expense of the class members. The only extra benefit accruing to the class representatives is the opportunity to seek an additional $10,000 service award per plaintiff—a total of $40,000, which is less than the mean total incentive award for class actions according to the most recent published data that Class Counsel could locate ($40,400 in 2021). *See* 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.). The Supreme Court has recognized the appropriateness of service awards. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811, n.7, (2018). As this Court has found, "[i]t is important to compensate the work and additional risk that a class representative takes on." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *7 (S.D. Ohio Nov. 25, 2019) (Rice, J.) ("*Brandenburg II*"). In *Brandenburg II*, the Court approved a $10,000 service award to the named Plaintiff for litigation that lasted less than 3 years, indicating that such an amount is wholly appropriate here. *Id.* at *1, *7.

These prospective service awards reflect fifteen years of active participation in this case, including being deposed, answering numerous discovery requests, and conferring with class counsel. A $10,000 service award is reasonable given the work and additional efforts that the named Plaintiffs

- 17 -

undertook in this long-running litigation.

### F. The public interest warrants approving this settlement.

"Public policy favors settlement of class action lawsuits." *Brandenburg II*, 2019 WL 6310376, at *4 (citation omitted). More specifically, public policy favors a settlement that "provides relief to the class members, avoids further litigation in a complex case, and frees the Court's judicial resources." *Id.* As demonstrated, the proposed settlement satisfies the criteria for finding settlement to be in the public interest.

### II. <u>The attorney's fees and costs to be requested will be fair, reasonable, and adequate.</u>

Pursuant to the proposed Settlement Agreement, Plaintiffs will submit a motion for approval of attorneys' fees and reasonable costs within 14 days of entry of an order preliminarily approving this settlement. The Parties have not agreed upon any "clear sailing" or similar provision. However, Class Counsel represents to the Court that, mindful of their ethical obligations to seek only a reasonable fee, they will not seek attorney's fees greater than one-third of the total recovery, a percentage commonly found acceptable in class actions. *See Brandenburg II,* 2019 WL 6310376 at *5. Class Counsel represent that any costs sought will be both reasonable and audited before submission for approval by the Court.

### III. <u>The proposed method of distributing relief to the class is appropriate and effective.</u>

In approving the proposed settlement, the Court should also consider "the effectiveness of any proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, for the class notice, the Settlement Agreement contemplates the simultaneous use of mail, a class website, and three weekly publications in the *Dayton Daily News*, a local newspaper of general circulation. Because of the geographic location of the class and the availability of property records for class members, providing notice to current and former owners for the Class Period should be

straightforward.

Additionally, consistent with due process requirements, any class member will be given an opportunity to opt-out of the class or object to class certification.

## IV.      **The proposed class notice is appropriate.**

In a Rule 23(b)(3) settlement class action such as this, the Court must direct that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Further, notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The proposed notice process will include direct mailings to both current and previous owners based on public records, a website notice, and multiple publication notices in a newspaper of general circulation in the Class Areas. Because of the static nature of real property, it will be much easier to provide notice to class members here as compared to tracking down hundreds or thousands of potential class members, as required in a consumer products class action. In this matter, notice will be mailed both to the property owner's mailing address on file with the property tax records as well as to the settlement class properties' address.   The Parties note that this double mailing will increase the likelihood that class members are apprised of the settlement.

Additionally, the proposed Notice form briefly describes the litigation, settlement terms, and settlement classes, and includes a copy of the Claim Form. The claims administrator will also circulate a Publication Notice in the *Dayton Daily News* for three consecutive weeks. The Publication Notice will provide similar information and direct a potential Settlement Class Member to the Class Website to obtain copies of the Claim Form.

The claims administrator will also update and maintain the Class Website to reach as many

class members as possible. The Class Website has already been secured and will include English and Spanish translations of the class proceedings.

Rule 23(b)(3) also requires that the notice provided to Class Members must "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on Class Members. *See* Fed. R. Civ. P. 23(c)(2). The proposed class Notice, attached as **Exhibit 2B**, complies with these requirements.

Both the method for disseminating the Notice to class members and the content of the proposed Notices meet the requirements of due process and the Federal Rules of Civil Procedure. Here, because the Settlement Classes are defined by geographic boundaries, notice will be sent to the eligible properties as well as to the addresses listed for eligible class members in the county property records. Publication Notice will supplement that mailed notice and increase the likelihood of class members being informed of their rights and obligations.

The content of the Notice provides all the required information concerning class members' rights and obligations under the proposed Settlement. It details the procedures for opting out, submitting claims, and filing objections, and notifies class members of the consequences of their choices. The Notice also explains the nature of the claims covered under the Settlement Agreement and the possible relief available. Under these circumstances, the proposed Notices are consistent with the requirements of due process and the Federal Rules.

**V.      The proposed Settlement Classes meet the requirements of Rules 23(a) and (b).**

The proposed settlement classes should be approved for settlement purposes. Effectuating reasonable class action settlements is a primary purpose of Rule 23. "Rule 23 is replete with references to . . . settlement classes." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 672 (6th Cir.

2020). Indeed, certifying a settlement class imposes a lighter burden than certifying a litigation class, as "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal citations omitted). Clearly, "settlement is a factor" in approving class certification. *Id.* at 622.

### A.   This Court has already determined that Rule 23(a) and the implied requirement of ascertainability are satisfied for the proposed settlement classes.

Rule 23(a) requires that the parties moving for class certification demonstrate the following: "(1) the class is so numerous that joinder of all members is impracticable ["numerosity"], (2) there are questions of law or fact common to the class ["commonality"], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"]." Fed. R. Civ. P. 23(a).

This Court has previously performed a class certification analysis in the litigation context for the same classes proposed here for settlement. It found Plaintiffs had satisfied the threshold concerns that the class members be ascertainable and that the scope of the class definitions was not overly broad. (Class Certification Decision, Page ID ## 9724–27.) Proceeding to analyze Rule 23(a)(1)'s numerosity requirement, the Court found the proposed classes were sufficiently "numerous that joinder of all members is impracticable," and that Defendants had implicitly conceded this point. (*Id.* at 9727.) The Court also found that Rule 23(a)(2)'s commonality requirement was satisfied, because all seven Common Issues "are common to the claims of all class members, and are capable of class-wide resolution." (*Id.* at 9729.) Citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), the Court observed that, to satisfy commonality, "there need be only a single issue common to all members of the class" and that class treatment "must be capable

- 21 -

of generating 'common answers apt to drive the resolution of the litigation.'" (Page ID # 9728) (citation omitted). The Court held that the Common Issues met these requirements. (*Id.* at 9729.)

The Court likewise found Rule 23(a)(3)'s typicality element was satisfied, stating "[t]he claims on which Plaintiffs seek class certification . . . all arise from the same course of conduct, and are based on the same legal theories." (*Id.* at 9732.) It also found Rule 23(a)(4)'s fair and adequate representation requirement was satisfied. (*Id.* at 9732–35.)

Thus, this Court has already determined that Rule 23(a) and ascertainability requirements were met, in the more demanding context of a proposed class certification for active litigation.

**B.     All Rule 23(a) elements are satisfied for the proposed settlement classes.**

When certifying the action pursuant to Rule 23(c)(4), the Court found that all Rule 23(a) elements and the implied ascertainability requirement were satisfied. Although this should dispose of the matter, as explained below, the proposed settlement classes satisfy these elements.

1.     <u>Numerosity</u>

No specific number is needed to satisfy the numerosity requirement of Rule 23(a)(1). "While no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers of affected [plaintiffs] are sufficient to satisfy this requirement." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).

Here, there are approximately 540 properties identified as being within the Class Areas. Given that the Settlement Classes include multiple owners for some single properties, the number of actual Class Members is likely higher. Accordingly, the Settlement Classes are sufficiently numerous to make joinder of all members impractical, and thus satisfy the numerosity requirement. Fed. R. Civ. P. 23(a)(1).

2.     <u>Commonality</u>

The proposed Settlement Classes also meet the commonality requirement of Rule 23(a)(2),

which requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the U.S. Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that the claims arising from that injury depend on a "common contention . . . of such a nature that it is capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).

Here, the Court has already found that the seven Common Issues are capable of class-wide resolution and has resolved some of those common issues on summary judgment. Evidence regarding the scope and extent of contamination, Defendants' historical operations, the extent of the investigation and remediation performed, the nature and extend of historical contamination at Defendants' facilities are common to class members and capable of class-wide resolution. Thus, especially for settlement purposes, the commonality requirement is satisfied. Fed. R. Civ. P. 23(a)(2).

### 3. Typicality

The proposed Settlement Classes also meet the typicality requirement of Rule 23(a)(3), which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require that the claims among the class members be identical, or even involve the exact same facts or law (although these claims do), they just need to share "a common element of fact or law." *Intercommunity Just. & Peace Ctr. v. Registrar, Ohio Bureau of Motor Vehicles*, 440 F. Supp. 3d 877, 889 (S.D. Ohio 2020) (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)).

Here, Plaintiffs' claims stem from the same nexus of operative facts and concern the same type of property damages as that of the class members. Plaintiffs have alleged that Defendants' operations caused TCE and PCE to infiltrate the groundwater throughout the Site, and that this contamination has or could contaminate their homes through vapor intrusion. Because of the alleged common sources, all class members are facing the same potential risk. Accordingly, for

- 23 -

settlement purposes, the requirement of typicality is satisfied.

            4.    <u>Adequacy</u>

The fourth and final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation requires that the class representative not have interests antagonistic to those of the class, and that class counsel be qualified, experienced, and generally able to conduct the proposed litigation. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).

All named class members have made the same claims as the underlying class members. The class representatives' claims will be subject to the same allocation of settlement funds as the claims of other class members. Thus, there is no conflict between the class representatives and the class members.

With respect to class counsel, the named members have retained counsel who are qualified and experienced in the prosecution of complex environmental, toxic tort, and class action litigation. Class counsel has secured this settlement, which they view as fair and reasonable considering all the circumstances. No class counsel is a member of any class.

In sum, for settlement purposes, each Rule 23(a) prerequisite to class certification has been met.

**C.      The proposed settlement class meets the requirements of Rule 23(b)(3).**

The Settlement Classes also satisfy the predominance and superiority requirements of Rule 23(b)(3). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks omitted) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 136, itself quoting *Rutstein v. Avis Rent–A–Car*

*Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)).[9]

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. The "nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005). Thus, where proof of the essential elements of the cause of action do not require individual treatment, predominance is satisfied. *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008).

"Settlement is relevant to a class certification." *Amchem*, 521 U.S. at 619. "Courts have found that settlements 'obviate[ ] the difficulties inherent in proving the elements of varied claims at trial,' and consequently, 'courts are more inclined to find the predominance test met in the settlement context.' " *In re Flint Water Cases*, 571 F. Supp. 3d 746, 790 (E.D. Mich. 2021) (citation and subsequent history omitted).

In the settlement context, "individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 346–47 (N.D. Ohio 2001) (citation omitted). For example, "individual issues relating to causation, injury, and damage . . . disappear" where "the settlement's objective criteria provide for an objective compensation scheme." *Id.*

Here, common questions predominate over individual issues. The same reasoning that persuaded the Court that predominance was satisfied on the seven Common Issues—which did not implicate individualized determinations of proximate cause and damages—applies with equal force here, where no individualized determinations of proximate cause and damages need be made.

---

[9] *In re Visa Check/MasterMoney Antitrust Litig.* was later modified to be less "lenient" on certain issues, but *Rutstein* and *Beattie* are still good law. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 36 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007)

The Settlement Agreement provides for individual awards to be determined by a common method for the class members with each member being entitled to their pro rata share of the same award. Additionally, individualized damages issues no longer exist. Any potential class members who object to this compensation scheme may formally object or opt out of class treatment.

Superiority is satisfied for settlement purposes as well. Under Rule 23(b)(3), the Court must also determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets forth several factors relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

The Court impliedly, if not expressly, already found a class action was a superior means of resolving this action, in the context of Rule 23(c)(4) certification. At the outset of the court's analysis, it acknowledged:

> Plaintiffs have cited many worthy reasons for class treatment. These include the fact that most of the putative class members lack the financial resources to pursue individual lawsuits, and the fact that judicial economy is best served by trying common issues in one lawsuit instead of hundreds of individual lawsuits. Accordingly, the Court turns to Plaintiffs' alternative motion to certify certain issues for class treatment under [Rule] 23(c)(4).

(*Id.* at 9749–50.) These findings correspond to two arguments Plaintiffs advanced in support of Rule 23(b)(3) superiority: (1) that "requiring duplicative discovery and multiple trials—here, over 500 individual suits—regarding the same issues of liability and causation would be wasteful and unfair" to the parties and the district court; and (2) that "a class action might be the only option for the McCook Field Plaintiffs to ever advance their claims," because the complexity of the case and high

- 26 -

litigation costs "could render pursuit of individual claims economically infeasible." (Class Certification Memorandum, RE 254-1, Page ID # 7402-7403.)

The Court then analyzed the question of whether, for issues to be certified for class treatment under Rule 23(c)(4), common issues must predominate over individualized ones for the entire action, or only for the issues certified. (Class Certification Decision, RE 274, Page ID # 9751–53.) The Court adopted the latter view. (*Id.* at 9753.) It, therefore, conditionally certified the Common Issues for class treatment and reserved individualized questions of causation and damages for future proceedings (assuming favorable findings for Plaintiffs on enough Common Issues). (*Id.* at 9753–54.)

A class action remains the superior method of resolving Plaintiffs' claims through the proposed settlement. Regarding factor (A) of Rule 23(b)—the interest of individual members in controlling the prosecution of individual actions in this instance—class members retain the ability to opt out of the settlement. Only two class members opted out of issue certification, out of 1,162 notices delivered (and a website and three publication notices), indicating that with few exceptions, class members are uninterested in pursuing their claims individually. This is partly due to the potentially small amount of recovery to each putative class member compared to the costs of litigation. Individuals are likely to be less inclined to file individual actions on their own. The "most compelling rationale for finding superiority in a class action ... [is] the existence of a negative value suit," in which the costs of litigation exceed the expected recovery. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 348 (N.D. Ohio 2001) (citation omitted).

Regarding factor (B)—the extent of litigation already begun by class members—the Parties are not aware of any other lawsuits by members of the proposed class against the Defendants.  As to factor (C), concentrating the litigation in this forum is appropriate because all claims arise in the Southern District of Ohio. Lastly, a Factor (D)—pertaining to trial manageability issues—is

irrelevant in this case because the proposed classes are settlement classes. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).

**VI.    The Court should establish a qualified settlement fund to effectuate the settlement.**

The Parties also hereby respectfully move the Court to establish a qualified settlement fund to aid in the efficient processing and administration of the Settlement Agreement. Specifically, the Parties respectfully request the Court (1) approve the attached Escrow Agreement (**Exhibit 2C**), which will create an escrow account as a Settlement Fund ("Settlement Fund"); (2) retain continuing jurisdiction and supervision over the Settlement Fund; and (3) determine that the Settlement Fund constitutes a single "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-l, et seq. ("Regulations").

The establishment of the Settlement Fund as a "qualified settlement fund" under the Code and Regulations, subject to the Court's continuing jurisdiction, is necessary and appropriate to achieve the objectives of the Settlement Agreement.  Without approval by, and continuing jurisdiction of the Court, the Settlement Fund would not satisfy the requirements of section l.468B-l(c)(l) of the Regulations, which requires that a qualified settlement fund be "established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia) territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

With the Court's approval and oversight, the Settlement Fund will be a "qualified settlement fund" under section 468B of the Code and sections l.468B-l, et seq. of the Regulations, because (1) the Settlement Fund is being established subject to approval of the Court, and will be operated

pursuant to the terms and conditions of the Escrow Agreement approved by the Court; (2) the Settlement Fund will be subject to the continuing jurisdiction and supervision of the Court; (3) the Settlement Fund is being established to resolve or satisfy claims of alleged tortious conduct; and (4) the Settlement Fund will be in an escrow account and its assets will be segregated from the general assets of the Defendants and deposited therein.

The Parties also hereby request that the Court approve the appointment of RG/2 Claims Administration LLC as escrow agent ("Escrow Agent") of the Settlement Fund. The parties further request that the Court approve RG/2 Claims Administration LLC as administrator ("Administrator") to administer the Settlement Fund pursuant to the terms of the Escrow Agreement and consistent with the Settlement Agreement. The funds held by the Escrow Agent in the Settlement Fund shall be disbursed by the Administrator only pursuant to and in conformance with the terms of the attached proposed Escrow Agreement and the Settlement Agreement. The Administrator shall serve as the "administrator" of the Settlement Fund as a "qualified settlement fund" within the meaning of section 1.468B-2(k)(3) of the Regulations. A summary of RG/2 Claims Administration, LLC's qualifications and experience is attached as **Exhibit 4.**

## VII. Proposed schedule of events

If the Court grants this Motion, the Parties propose the following schedule, which is set forth in the proposed Settlement Agreement attached hereto as **Exhibit 2** and proposed Order attached hereto as **Exhibit 2E**:

| Event | Schedule |
|---|---|
| Initial establishment & funding of Settlement Fund | Preliminary Approval Date+ 30 days. |
| Full funding of Settlement Fund | Notification from Claims Administrator + 30 days |

| Deadline for mailing, publishing, and posting Class Notice ("Notice Date"). | Preliminary Approval Date+ 30 days. |
|---|---|
| Deadline for filing attorneys' fee petition. | Preliminary Approval date +14 days. |
| Deadline for opting out or objecting. | 30 days after Notice Date |
| Deadline for submitting Claim Form | 60 days after Notice Date |
| Fairness hearing | Notice Date + 60 days or more |

## CONCLUSION

For the reasons stated herein, the Parties jointly request that the Court preliminarily approve the Parties' proposed Settlement Agreement, appoint Class Counsel as Settlement Class Counsel, appoint RG/2 as Claims Administrator, certify a Rule 23(b)(3) class for settlement purposes, approve the proposed class notice and order notice of the Settlement to eligible Class Members, and grant such other relief and orders as the Court deems necessary and appropriate.

Dated: September 15, 2023

Respectfully submitted,

/s/ Patrick Thronson
JANET, JANET & SUGGS, LLC
Howard A. Janet
Patrick A. Thronson
4 Reservoir Circle, Suite 200
Baltimore, Maryland 21208
Facsimile: (410) 653-9030
Email: hjanet@myadvocates.com
Email: pthronson@jjsjustice.com

BRANNON & ASSOCIATES
Douglas D. Brannon
130 West Second Street, Suite 900
Dayton, Ohio 45402
Facsimile: (937) 228-8475
Email: dougbrannon@branlaw.com

NATIONAL LEGAL SCHOLARS LAW FIRM, P.C.
Ned Miltenberg

- 30 -

5410 Mohican Road, Suite 200
Bethesda, Maryland 20816-2162
Email: NedMiltenberg@gmail.com

GERMAN RUBENSTEIN LLP
Steven German
Joel Rubenstein
19 West 44th Street, Suite 1500
New York, New York 10036
Facsimile: (212) 704-2020
Email: sgerman@germanrubenstein.com
Email: jrubenstein@germanrubenstein.com

*Counsel for Plaintiffs Terry Martin, Deborah Needham, Linda Russell, and Nancy Smith, individually and on behalf of all others similarly situated.*

*/s/ Edward Cohen (with permission)*
THOMPSON COBURN LLP
Edward A. Cohen
J. David Duffy
One US Bank Plaza
St. Louis, Missouri 63101
Facsimile: (314) 552-7000
Email: ecohen@thompsoncoburn.com
Email: dduffy@thompsoncoburn.com

Erin E. Rhinehart (0078298)
          Trial Attorney
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3714
Telecopier: (937) 227-3717
Email: erhinehart@ficlaw.com

*Counsel for Defendant Old Carco, LLC, formerly known as Chrysler, LLC, as nominal defendant*

*/s/ Michael Lichtenstein (with permission)*
LOWENSTEIN SANDLER LLP
Michael D. Lichtenstein
One Lowenstein Drive
Roseland, New Jersey 07068

Facsimile: 973.597.2409
Email: mlichtenstein@lowenstein.com

***Attorneys for Defendant Aramark Uniform &
Career Apparel, LLC***

*/s/ Khalilah Spencer (with permission)*
HONIGMAN LLP
Khalilah V. Spencer
Raechel T.X. Conyers
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Facsimile: (313) 465-7655
Email: kspencer@honigman.com
Email: rconyers@honigman.com

***Attorneys for Defendants MAHLE Behr USA, Inc.
and MAHLE Behr Dayton LLC***